United States Court of Appeals,

Fifth Circuit.

No. 92-2690

Summary Calendar.

FIRST BANK & TRUST, Plaintiff-Appellant, Cross-Appellee,

v.

Allen B. KNACHEL, et al., Intervenors-Plaintiffs, Appellees, Cross-Appellants,

v.

M/V FOUR POINT X, Defendant.

Aug. 26, 1993.

Appeals from the United States District Court for the Southern District of Texas.

Before REYNALDO G. GARZA, DUHÉ and EMILIO M. GARZA, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

The appellant, First Bank, appeals from the judgment granting the appellees, the crew, status as seamen on an "in navigation" vessel and therefore entitled to a preferred maritime lien for their wages. Upon review, we find no clear error in the court's finding of fact that the vessel was in navigation. We find that the crew was also entitled to prejudgment interest. We therefore affirm in part, and remand in part.

FACTS

On July 2, 1986, the owners of M/V Four Point X ("Four Point"), Hau and Richard Meeks, executed a promissory note to First Bank for $70,000. They executed another note to First Bank on April 20, 1987, for $42,454.08. The Meeks defaulted on their payments and the debt was accelerated. First Bank foreclosed on its mortgages against the vessel and at the time of trial claimed a debt owed of $150,058.59.

In August of 1990, Allen Knachel and William Slott were hired as the ship's captain and chief engineer by Meeks to prepare the ship for a voyage to Haiti. Within one week, the men had both main engines and one generator working. Meeks and his agent, Wilson, were constantly supervising.

First Bank's surveyor, Underhill, surveyed the vessel at the dock in Sabine Pass.

On September 5, 1990, Knachel, Slott, Meeks, Wilson and two or three others sailed the vessel from Sabine Pass to Bolivar, Texas. The repairs continued in Texas. In September, 1990, Meeks filed for bankruptcy. In early November, the vessel was towed to a dock at Milt's Seafood. The vessel was towed, even though it was able to navigate, because of inclement weather. In December, 1990, Knachel, following Meek's instructions, hired more crew members in order to assist in the repairs in anticipation for the trip to Haiti. The nine man crew, the appellees, consisted of Captain Knachel, chief engineer Slott, engineers Gleason and Paquio, wheelmen/able-bodied seaman Horton and Force, cook Ewart, and ordinary seamen McDowell and Marvin.

Around January 6, 1991, the crew sailed the vessel to Swift Ships shipyard in Freeport, Texas for final repairs. The crew was removed the next day and never paid. The appellees claimed a preferred maritime lien for seamen's wages. After a two day bench trial, the men were granted preferred maritime lien status as seamen on a vessel in navigation. First Bank timely appeals this judgment and the appellees cross-appeal requesting prejudgment interest.

ANALYSIS

The appellant argues that the court used the wrong legal standard in making its fact finding on whether the Four Point was in navigation. They further argue that since the ship was not in navigation the appellees are not entitled to a preferred maritime lien as crew members. We disagree.

Whether a ship is in navigation is a factual issue. *Fredieu v. Rowan Companies, Inc.,* 738 F.2d 651, 654 (5th Cir.1984). Factual findings will be affirmed unless clearly erroneous. *Chavez v. Housing Authority of El Paso,* 973 F.2d 1245, 1247 (5th Cir.1992). The court correctly used the "in navigation" standard set forth in *New England Fish Co. v. Barge Sonya,* 332 F.Supp. 463 (D.Alaska 1971). A ship is considered in navigation when there is an intention to put out to sea and it is being repaired for the voyage. *Id.* 332 F.Supp. at 467-68. The appellant had invited the court to use this standard. The Four Point was being prepared for voyage and the ship did navigate several voyages under its own power. The vessel had working engines and a running propeller and her equipment was never removed to take her out of potential service. There was testimony given that the hull was intact

and that the intention was to sufficiently repair the vessel for a voyage to Haiti.

The legal standard used by the court was proper. There is no clear error in its fact finding that the ship was in navigation. Therefore the appellees are correctly entitled to a preferred maritime lien for wages as crew members.

The appellees request prejudgment interest in a cross-appeal. The appellants concede that the appellees are entitled to interest to the extent they are entitled to the preferred maritime lien. The court should have granted prejudgment interest for the preferred maritime lien. Notwithstanding peculiar circumstances creating an inequity, absent in this case, the court should grant interest in admiralty cases. *Platoro LTD. v. Unidentified Remains, Etc.,* 695 F.2d 893, 906 (5th Cir.), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983).

## CONCLUSION

We find no clear error in the court's fact finding that the vessel was in navigation. We AFFIRM the designation of the claims of the appellees as a preferred maritime lien for wages for the crew. We further find that the crew was entitled to prejudgment interest. We therefore REMAND this case to the district court to calculate the amount of interest to be awarded.